## No. 10,696.

### THOMAS R. BRADY VS. HIS CREDITORS.

1. Attorney's fees claimed against an insolvent's estate will not, in the absence of proof, be diminished as excessive in the face of the fact that same were examined and approved by the trial judge, who was personally cognizant of the services rendered.

2. The syndic is, under the law, entitled to 5 per cent. on the amount of "moneys received," as his commissions, in case the creditors, when choosing a syndic, fail to fix and determine the amount thereof differently.

3. While a mortgage creditor is entitled to pay taxes due on mortgaged property and have himself legally subrogated to the rights of the State, yet such lien and privilege can not be enforced against the proceeds when marshaled for distribution without clear and satisfactory proof of taxes having been paid with the amounts and years stated.

4. In case a judgment has been duly recorded, and neither legally revived nor reinscribed within ten years, its effect ceases as to other and junior mortgages, which become first in rank and maintain priority by timely record and reinscription.

APPEAL from the Civil District Court for the Parish of Orleans. *Voorhies, J.*

*James D. Coleman* for Opponent and Appellant:

When property is sold under execution to pay mortgage debts, the mortgages upon the property to which the price was to be applied are extinguished as far as the property is concerned, and the rights of the parties are transferred to the funds. It is not therefore necessary to reinscribe the mortgages to prevent their inscription being barred by ten years' prescription. Fillastre vs. St. Armand, 32 An. 354.

Where property is sold subject to mortgages, and the proceeds of sale are paid to the sheriff, the mortgages are *eo instanti* referred to the proceeds, and those mortgages entitled by law to be discharged out of the proceeds are so discharged by the application of such proceeds to the extinguishment of the mortgages.

Brady vs. His Creditors.

A reinscribed mortgage creditor who, by orders of court, detains the proceeds in the hands of the sheriff until mortgages prescribe, which at the date of the sale and payment of proceeds had not perempted, can not claim the proceeds to the prejudice of the mortgagee, who at the date of the sale outranked his reinscribed mortgage. The test of priority is to be determined at the time when the proceeds are realized, and prescription thereafter does not affect the right of priority existing at time of sale. Wright, Williams & Co. vs. Bank of U. S., 7 An. 123; Succession of Dejan, 8 An. 505; Succession of Ynogoso, 13 An. 559; Succession of Rhea, 33 An. 370.

Where the proceeds of sale of property under execution suffices to fully discharge mortgages to which said proceeds legally apply, the debt is discharged and interest ceases.

A party who claims less than may be actually due him, or who acquiesces in a judicial declaration of an amount as due which is less than he might have claimed, and consents to a judgment fixing the amount of his claim, is concluded by his action and remits the surplus. C. P., Art. 91.

*J. E. Wallace* contra:

1. The registry of a judgment obtained on an act of mortgage does not satisfy the law of reinscription; the latter can be made only in the *manner* that the inscription is *first made*. Rocherau vs. Dupasseur, 22 An. 402; C. C. 3369.

2. After the lapse of ten years without reinscription before that time subsequent mortgages are not affected by the first inscription, and neither notice nor the pendency of the suit on the mortgage dispenses with reinscription. 31 An. 343, Chapman vs. Nelson; 30 An. 11, Watson vs. Boidurant; 29 An. 323, Adams vs. Dannis.

3. A creditor may pursue his remedy till a stay of proceedings arrests him, and he who has obtained a judgment before insolvency and had it registered will have a privilege on immovables from the issuing of execution. Hanna vs. His Creditors, 12 M. 32.

4. Prescription against the creditors of an insolvent is suspended by a *cessio bonorum.* 1 R. 556; 8 R. 145; 11 R. 346; 1 An. 365; 3 An. 529.

5. Where a judgment is taken by default and afterward confirmed, the right of mortgage grows out of the final judgment, and does not revert to the date of the judgment by default. Ingham et als. vs. Thomas, 6 L. 83.

*Wm. R. Mills* on the same side.

*James Timony* and *H. C. Cage* for Opponent and Appellee:

1. The judgment of Mrs. Mary Hughes was recorded December 11, 1874. It was reinscribed November 26, 1884. It was timely revived, and the judgment of revival was recorded on April 28, 1885. It is the senior ranking mortgage on the property of Brady discussed herein.

2. The judgment of the Hibernia Insurance Company was rendered, and signed on June 12, 1875. Brady made a cession of his property on November 28, 1885. The *judgment* of the Hibernia Insurance Company thus *prescribed* on June 12 1885, and had no existence when Brady made his cession on November 28, 1885.

3. The writ of *fieri facias* issued by the Hibernia Insurance Company had no effect to interrupt the prescription of its judgment. 31 An. 395.

4. When the debt has become extinguished, the mortgage given to secure it becomes extinguished also. There can be no mortgage to secure the payment of an extinguished debt. 20 An. 199.

5. A judgment will be prescribed by the lapse of ten years from its date unless revived. The judicial mortgage arising in virtue of a judgment, and the hypothecary action authorized by the mortgage, both perish by the prescription of the judgment.

Service of citation in the hypothecary action will not interrupt prescription of the judgment.

When the judgment prescribes, the accessary judicial mortgage ceases to exist. An ordinary action will not be affected by the lapse of time while it is pending, but if during the pendency of the suit the right asserted and sought to be enforced should be extinguished, the action could no longer be maintained. Chapman, Ex., vs. Citizens Bank, 31 An. 395.

6. In the case of Wells vs. Gauthreaux, Sheriff, et als., a *fi. fa.* was issued and property seized thereunder, and advertised for sale. The sale was enjoined. Pending the trial of the injunction the judgment prescribed. A plea of prescription was filed by defendant in execution, plaintiff in injunction.

*Held* by the Court of Appeals for the parish of Orleans:

That the judicial mortgage, the seizure, the privilege resulting therefrom, and everything else, fell with the judgment, and that the pendency of the writ of *fi. fa.* and the injunction suit *did not interrupt the prescription of the judgment.* Decided by the Court of Appeals at the last session.

7. It is incumbent on the Hibernia Insurance Company, in order to be put on the account *at all*, to prove not only its judgment, but its inscription, reinscription and *revival*, and this without the necessity of the filing of any plea of prescription against it.

This formed part of the evidence necessary to make out its case. Succession of Réné Gagneux, 40 An. 701.

8. The rule is without exception, that the mortgage falls with the principal obligation to which it is accessory. 8 An. 474.

9. When property has been sold under execution to pay mortgage debts, the mortgages upon the property to which the price was to be applied are extinguished so far as the property is concerned, and the rights of the parties are transferred to the funds. 7 An. 123.

10. No reinscription of a *mortgage* is necessary where the mortgagor has made a surrender of his property and obtained a stay of proceedings. The rights of the creditors of an insolvent must be acted on with reference to their situation when his *bilan* was filed, and all proceedings against him stayed. 7 Rob. 61, C C. 3362.

At the time Brady filed his *bilan* (November 28, 1885) the judgment and inscription thereof of the Hibernia Insurance Company were prescribed.

11. All privileges and mortgages existing on property sold under execution, where the debtor has no other property to pay his debts, are transferred from the property to its proceeds, the distribution of which must be made as in case of a *concurso*. 7 Rob. 73.

12. Where proceeds of property sold under special mortgage are more than sufficient to satisfy said mortgage, and there are subsequent mortgages existing against it, the surplus of the price should be applied by the sheriff to the satis-

faction *pro tanto* of the subsequent general mortgages according to their dates. Nor would the levying of an execution upon such surplus by any other creditor of the mortgagor secure any privilege to the seizing creditor. 8 Rob. 175.

13. The judgment of J. H. Massie was recorded April 21, 1882, and is inferior in rank to that of Mrs. Mary Hughes, which was recorded December 11, 1874, and since kept in full force and effect by timely reinscription and revival.

14. Massie obtained no privilege or priority by his levying of execution on the proceeds of sale of the property in the hands of the sheriff. 8 Rob. 175.

The opinion of the court was delivered by

WATKINS, J.   This appeal presents the sequel of a prolonged judicial controversy among certain mortgage creditors of Brady, the insolvent, whereby a simple question has been involved in a maze of difficulties.   It will suffice to state that one William P. Smith, in executory proceedings forclosed a certain alleged special mortgage of Brady on two improved lots in the city of New Orleans, and which were adjudicated to one McAdam for about $4700.   These proceedings and sale gave rise to various third oppositions, injunctions and seizures on the part of the Hibernia Insurance Company, J. H. Massie and Mrs. May Hughes—all claiming to be judicial mortgage creditors of Brady, and entitled to preference in receiving payment.

The agitation of these controversies brought them before this court several different times, without any practical solution thereof having been reached.

Eventually Brady made a cession of his property to his creditors, under the insolvent law of the State, and a definitive syndic was elected and qualified.

At this crisis of his affairs he and the public administrator put in an appearance.

The sole asset which was surrendered by the insolvent, and which figures at his credit in his *concursus* and *mortuaria*, is the sum of $4323.42, alleged to be the net balance of the proceeds of sheriff's sale in Smith vs. Brady, after the deduction of certain taxes, costs and charges.

The syndic filed an account and placed this sum thereon, as the sole amount for distribution among privileged, mortgaged and ordinary creditors; and the then judicial mortgage creditors renewed their contest, by making opposition to the various items appearing on said account in favor of notary, attorneys of the syndic, commissions of the syndic, and a sum alleged to be in reimbursement of an

amount which was expended by W. P. Smith in payment of Brady's taxes while the property was under mortgage. They also contest the amount and relative rank of each other's mortgages.

From a judgment overruling the opposition, and opposing the distribution of the fund in question as proposed, the Hibernia Insurance Company and Massie have appealed.

## I.

The item of notary's fees of $50 in favor of Omer Villere is opposed, but no proof was administered in reference to it. The record shows that the meeting of creditors was held in his presence and that he conducted the proceedings. Such fees are properly chargeable against the mass of creditors of the insolvent, and we are disposed to think the allowance a reasonable one.

## II.

The item of attorney's fees of $400 is also opposed, though it is conceded that $200 would be a reasonable and proper charge for the services rendered. On this question no proof was adduced by either party, and we have no other means of judging of the value of the services rendered than what is shown on the record. The judge who tried the cause in the lower court was personally cognizant of them, and is a better judge of their value than we are, and we are not disposed to *arbitrarily* disturb his judgment.

## III.

The item of $216.17, charged in favor of the definitive syndic as commissions, is an allowance of 5 per cent. upon the total amount of the assets administered.

The law provides that " in no case shall the syndic be entitled to receive greater commissions than at the rate of 5 *per centum* upon the net amount of money received." R. S. 1818. The creditors, in their deliberations at the time of electing a syndic, had the right " to determine the rate and amount of the commissions to be received by him" (Ibid.) ; but they failed to do it.

The amount allowed is legal.

## IV.

The item of $400.36 allowed W. P. Smith in reimbursement of taxes paid by him, with legal subrogation, is not established by proof

sufficient to justify its allowance. We have carefully examined all three of the records of this court, constituting the consolidated transcript of appeal, without finding anything more than casual statements and inferences of *some* taxes having been paid by Smith for Brady during the time he held the latter's mortgage note, and prior to its foreclosure. But the tax bills and receipts which are annexed to the petition for the order of seizure and sale rather indicate that Brady had paid the taxes himself; and Smith, as a witness, does not specify the taxes he paid, the amounts annually, or the years in which same became exigible against the property.

We think his claim should have been rejected.

### V.

The only two mortgages which figure on the syndic's account are (1) one in favor of Mrs. Mary Hughes for $2012.73, with interest, and (2) one in favor of J. H. Massie for $2100, with interest.

No mention is made on the account of a judicial mortgage in favor of the Hibernia Insurance Company; but Mrs. Hughes levels at its opposition to the syndic's account a plea of ten years' prescription against its judgment, and the presumption of its judicial mortgage, because of its failure to reinscribe the same, and counsel's brief discloses that it was on that theory that same was omitted from the account.

An examination of the certificate of mortgages shows that Mrs. Mary Hughes recovered a judgment against Brady for $2500 upon the 27th of November, 1874, and had a copy of same recorded in the proper book of mortgages on the 11th of December, 1874. This judgment was seasonably revived by proper judgment, and reinscribed on the 24th of November, 1884.

Subsequently, Mrs. Hughes caused a *fi. fa.* to be issued thereunder, and some small properties of Brady to be seized and sold, and the net amount of $487.27 was realized and applied to her credit on the writ. In this manner her judgment was reduced from $2500 to $2012.73, the amount of the balance for which she is placed on the syndic's account.

It appears that J. H. Massie obtained a judgment against Brady for $3400 on the 19th of December, 1877, and recorded same as a mortgage on the 11th of January, 1879; but it was finally reduced in amount to $2100 by a decree of this court in 1882.

Railroad Co. vs. Mrs. Barton.

The Hibernia Insurance Company obtained a judgment against Brady on the 12th of June, 1875, and caused the same to be recorded as a mortgage on the 14th of July, 1875. That judgment was never recorded.

It is manifest from this statement that the judgment in favor of the Hibernia Insurance Company run to prescription during Brady's lifetime and prior to his insolvency, and it is unnecessary to inquire whether it was duly and properly reinscribed or not, as a reinscription *alone* would not preserve it.

The judgment in favor of Massie not becoming final until 1882, is not prescribed; and as it is the *only* competing mortgage in the record, a reinscription was unnecessary. But at all events there was no occasion for its reinscription after Brady's cession and subsequent death, whereby the rights of all parties were fixed.

While it is contended by the Hibernia Insurance Company alone (and it being without interest) that the 5 per cent. interest allowed in the judgment in favor of Mrs. Mary Hughes is good but for *one* year, it may be well to premise that such a pretension lacks all foundation. The language employed is "without interest at 5 *per cent.* from May 19, 1877." That phrase is an exact equivalent for *per annum* during that period of time. The law fixes the rate of legal interest at 5 per cent. *per annum.* R. C. C. 1938; 33 An. 582.

The judgment must be amended.

It is therefore ordered and decreed that the judgment and account be so amended as to disallow the item of taxes paid by W. P. Smith, $400.36, and that as thus amended the same be affirmed at the cost of W. P. Smith and opponents.